**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Ruben Arturo Celaya-Jaramillo,<br><br>    Defendant. | No. CR 16-1884-TUC-CKJ<br><br>**ORDER** |

On November 4, 2016, this Court ordered Ruben Arturo Celaya-Jaramillo ("Celaya-Jaramillo") be detained. The Court informed the parties it would issue a more detailed order. This is that Order.

*Factual and Procedural History*

Celaya-Jaramillo was arrested on September 6, 2016, when he applied for entry into the Untied States from Mexico at the DeConcini Port of Entry in Nogales, Arizona. The Complaint alleges Celaya-Jaramillo was the driver of a 2014 Kia Optima with an Arizona license plate. Celaya-Jaramillo informed officers he had owned the Optima for about six months and that he was entering the United States to go to work in Rio Rico, Arizona. As officers were speaking with Celaya-Jaramillo, they noticed the odometer of the Optima seemed to protrude from the dashboard and the screws in the area appeared to be colored over with a marker. The Optima was inspected and ten foil-wrapped pages were discovered concealed within the vehicle's dashboard. A field tested yielded positive results for the chemical properties of cocaine. The packages weighed approximately 11.9 kilograms.

The Complaint states Celaya-Jaramillo, after waiving his *Miranda* rights, admitted he was going to be paid $2,000.00 to deliver his vehicle containing an unknown substance to an unknown third party at or near the Valencia Food City in Tucson, Arizona.

The Complaint also states Celaya-Jaramillo is a Mexican citizen, a legal permanent resident of the United States, had been staying with his mother in Mexico, and was entering the United States to go to work in Rio Rico, Arizona.

At the September 7, 2016, Initial Appearance, Celaya-Jaramillo was ordered temporarily detained pursuant to 18 U.S.C. § 3142.

A detention hearing was held on September 9, 2016. Celaya-Jaramillo was ordered released to the third party custody of his wife, Denise Garcia Leal, who resides in Rio Rico, Arizona, with a bond in the amount of $2,000. A stay of release was ordered in order to permit the government the opportunity to seek reconsideration or review. The magistrate judge was subsequently advised there would be no appeal and the stay was vacated. Celaya-Jaramillo was released under the bond and conditions of release on September 16, 2016. Celaya-Jaramillo, who had a detainer from Immigration and Customs Enforcement ("ICE"), was placed into immigration custody.

On October 5, 2016, Celaya-Jaramillo was indicted for Conspiracy to Possess with Intent to Distribute Cocaine, Possession with Intent to Distribute Cocaine, Conspiracy to Import Cocaine, and Importation of Cocaine.

On October 21, 2016, the matter was scheduled for arraignment. At that time, defense counsel informed the magistrate judge Celaya-Jaramillo was not present and was in immigration custody.

On October 26, 2016, the government filed a Motion to Reopen Defendant's Detention Proceedings (Doc. 19). The motion states:

> Because the defendant had an ICE hold on him for immigration court proceedings related to his conduct of bringing narcotics into the country through the port of entry, he was picked up by ICE and has been in their custody pending immigration proceedings since his release. On today's date, October 26, 2016, the defendant had the equivalent of his initial appearance on his immigration charges. He declined the opportunity to continue the proceedings in order to obtain counsel or otherwise fight the charges. Instead, he agreed to proceed with the hearing and admitted all of the

- 2 -

> allegations, including that he attempted to bring 11.9 kilograms of cocaine into the country on September 6, 2016. The immigration judge found him removable based on his admissions and, since there were no forms of relief for which he was eligible, ordered him removed from the United States. The defendant declined his right to appeal the decision. Based on these findings, ICE will remove the defendant from the United States on Friday, October 18, 2016, in keeping with their requirements to remove such aliens within 72 hours of the removal finding. The defendant is inadmissible to the United States for ten years based on the immigration court findings earlier today.

Motion (Doc. 19), p. 2.[1] The government argued that, as a result of the final removal order, Celaya-Jaramillo's legal permanent resident status has terminated and he is no longer legally present in the United States. 8 C.F.R. 1.1p; *United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir. 2003); *Foroughi v. United States*, 60 F.3d 570 (9th Cir. 1995.). Further, this material change in circumstance warranted the re-opening of the detention proceedings.

On October 27, 2016, the magistrate judge heard argument regarding the government's Motion to Reopen Defendant's Detention Proceedings (Doc. 19). The magistrate judge denied the Motion and issued an Order addressing the issues raised therein. The magistrate judge stated in part:

> The inescapable common theme behind the government's argument for detaining the defendant pending trial is that the government – the same Executive Branch, mind you, but a different agency – will involuntarily remove the defendant from the United States if he is released from custody under the Bail Reform Act pending his criminal trial, and the "government" is without power to stop the removal process that it initiated while the criminal case is pending. This same argument has been made by the government and rejected by many courts around the country in cases involving defendants who present a far less compelling case for pre-trial release than the defendant in the case at hand. This Court too rejects the argument that the defendant is a flight risk under the Bail Reform Act solely because the government initiated removal proceedings and will remove him from the United States while the criminal case is pending[.]

October 27, 2016, Order (Doc. 25), p. 2. Additionally, the magistrate judge determined that the two Executive Branch agencies (U.S. Attorney's Office and Department of Homeland Security) could and should be able to coordinate their respective interests regarding Celaya-Jaramillo. *Id.* at 9-11.

---

[1] The Motion refers to October 18, 2016, as the date of removal. However, the Motion for Review of Denial of Motion to Reopen Detention Hearing states Celaya-Jaramillo was scheduled for removal on Friday, October 28, 2016. Motion to Reopen (Doc. 22), p. 1.

1    Also on October 27, 2016, the government filed a Motion for Review of Denial of
2    Motion to Reopen Detention Hearing (Doc. 22).[2]  A response (Doc. 24) has been filed.  This
3    Court granted the Motion for Review, ordered the conditions of release be revoked, and
4    ordered Celaya-Jaramillo be detained pending a detention hearing.  A detention hearing was
5    scheduled for November 4, 2016.
6    At the November 4, 2016, detention hearing, the Court heard argument regarding the
7    release or detention of Celaya-Jaramillo.  The Court ordered Celaya-Jaramillo be detained.

*Facts Regarding the History, Character and Community Ties of Celaya-Jaramillo*

The September 8, 2016, Pretrial Services Report ("PTS report") (Doc. 4) states Celaya-Jaramillo, age 30, advised the Pretrial Services Officer ("PTO") he was born in Nogales, Sonora, Mexico to Mexican parents.  Celaya-Jaramillo has been residing with his parents in Mexico for the past two-four weeks.  His brother, a Mexican citizen, resides in Nogales, Mexico and they maintain regular contact.  His sister, a U.S. citizen, resides in Sahuarita, Arizona and they have regular contact.  Celaya-Jaramillo's wife, who lives in the United States, verified Celaya-Jaramillo's family and social information.

Celaya-Jaramillo stated he had lived in Mexico from birth until the age of thirteen before moving with his family to Tacoma, Washington.  Celaya-Jaramillo lived in Washington for approximately eight years, followed by two years in Tucson, Arizona, one year in Nogales, Mexico, one year in Tacoma, Washington, five years in Albany, Oregon, eight months in Vernal, Utah, three years in Phoenix, Arizona, and nine months in Rio Rico, Arizona.  Celaya-Jaramillo's wife corroborated his previous residences.

Celaya-Jaramillo and his wife had been together for four years and married for three

---

[2]The Court notes the government did not seek review when the initial detainer was placed on Celaya-Jaramillo.  It was only when circumstances of the case and Celaya-Jaramillo were changed that the government sought review.  In other words, it was only when Celaya-Jaramillo's motivation to remain in the United States or appear for further criminal proceedings (including additional admissions at the immigration hearing) appeared minimal did the government seek review.

- 4 -

years. Previously, Celaya-Jaramillo had been residing with his wife in Rio Rico, Arizona, for nine months, but they separated two weeks ago and he relocated to Mexico. Celaya-Jaramillo's wife has indicated he is welcome to return to their residence in Rio Rico if released by the Court. Celaya-Jaramillo's wife is willing to serve as a third party custodian. Pretrial Services believes she is a suitable third party custodian.

Celaya-Jaramillo does not possess a foreign passport. He daily travels to Nogales, Arizona, for employment purposes.

Celaya-Jaramillo has been self-employed, earning approximately $2,000 per month, for the past three months working in the capacity of purchasing and selling vehicles and as a landscaper. Celaya-Jaramillo did not list any financial assets.

Celaya-Jaramillo consumes up to 20 alcoholic beverages on the weekend and consumes cocaine two times per month.

Celaya-Jaramillo has no criminal history.

The PTS report assessed the risk of Celaya-Jaramillo's non-appearance as follows:

> The defendant is legal permanent resident of the U.S. with verified family and community ties to the district. Pretrial Services views the defendant as a risk of nonappearance based on his current residence and significant family ties in Mexico, unverified employment, current use and history of cocaine abuse, possible alcohol abuse and tenuous immigration status, however, Pretrial Services believes there are conditions of release to mitigate these risks.

PTS report (Doc. 4), p. 3. Additionally, the PTS report assessed Celaya-Jaramillo as presenting a risk of danger to the community based on the nature of the alleged instant offense, current use of cocaine and possible alcohol abuse.

PTS recommended Celaya-Jaramillo be released to the third party custody of his wife, Denise Garcia Leal, with specified conditions.

An October 31, 2016, Addendum to the PTS summarized that Celaya-Jaramillo "appeared in immigration court on October 26, 2016 before an immigration judge and waived his removal to Mexico. The defendant's legal permanent residency has been rescinded. The defendant was ordered removed to Mexico, effective immediately." Addendum (Doc. 27), p. 1.

PTS reassessed this matter and, recognizing there has been a change in Celaya-Jaramillo's immigration status and the permanent residency standing of Celaya-Jaramillo has been annulled, stated it "does not believe this change in circumstances warrants a recommendation of detention." *Id*. at 2.

*Review of Release Order*

Under 18 U.S.C. § 3145(a), the government may seek revocation of a magistrate judge's order releasing a criminal defendant. This Court reviews a detention or release order *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990).

*Bail Reform Act – Change of Celaya-Jaramillo's Circumstances*

For purposes of this Order, the Court does not accept or reject the determination of the magistrate judge. However, in issuing his Order, the magistrate judge did not address whether the change in circumstances warranted a new consideration of the Bail Reform Act ("BRA") factors regarding Celaya-Jaramillo. As the Court finds herein that detention under the BRA is appropriate, the Court need not review the issues addressed by the magistrate judge

The BRA governs the detention of a defendant pending trial. 18 U.S.C. § 3142. The release of a person pending trial is mandated unless the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). If there is probable cause to believe a defendant has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed, there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (citing 18 U.S.C. § 3142(e)). Although the presumption shifts a burden of production to a defendant, the burden of persuasion remains with the government. *Id*. (citing *United States v. Rodriguez*, 950 F.2d 85, 88 (2nd Cir. 1991)). "A finding that a defendant

- 6 -

is a danger to any other person or the community must be supported by "'clear and convincing evidence.'" *Id.* (quoting 18 U.S.C. § 3142(f)(2)(B)). Further, a finding that a defendant is a flight risk must be supported by a preponderance of the evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). The alienage of a defendant "may be taken into account, but it does not point conclusively to a determination that [a defendant] poses a serious risk of flight." *Id.* at 1408. "The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at [a detention] hearing." 18 U.S.C. § 3142(f)

If a defendant proffers evidence to rebut the presumption of dangerousness or risk of flight, a court is to consider the following factors in determining whether the pretrial detention standard is met: (1) the nature and seriousness of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *Hir*, 517 F.3d at 1086; *see also United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986) (citing 18 U.S.C. § 3142(g)). The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Hir*, 517 F.3d at 1086.

The Court has considered the evidence and argument presented by the parties. As to the first factor, Celaya-Jaramillo has been indicted for four serious drug-trafficking offenses which carry a maximum penalty of 20 years in prison. The Court finds this factor weighs in favor of Celaya-Jaramillo' detention.

As to the second factor, in light of Celaya-Jaramillo's admissions at the time of the offense and in the immigration proceedings, the Court finds the weight of the evidence against Celaya-Jaramillo is significant. This factor favors the detention of Celaya-Jaramillo.

- 7 -

Under the third factor, the Court finds Celaya-Jaramillo has significant ties to Mexico and also has significant ties to the United States. Here, there is a recent separation between Celaya-Jaramillo and his wife; upon separation, Celaya-Jaramillo changed his residence from the United States to Mexico. However, Celaya-Jarmillo's wife has consented to be his third party custodian and has agreed that Celaya-Jaramillo can reside with her pending these proceedings. In light of the separation of Celaya-Jaramillo and his wife, it appears Celaya-Jaramillo has few stable, lasting ties to the United States. Although his wife and U.S. citizen sister continue to reside in the U.S., Celaya-Jaramillo's Mexican citizen parents and brother continue to reside in Mexico. In addition, because Celaya-Jaramillo's U.S. family members are either legal permanent residents or United States citizens, they would have the ability to visit Celaya-Jaramillo in Mexico if he fled the jurisdiction. Other close family members reside in Mexico. Additionally, as Celaya-Jaramillo has been self-employed, it is not verifiable by an employer (his wife has verified his employment information). Moreover, as Celaya-Jaramillo has lost his permanent resident status, he is no longer legally employable in the United States. Indeed, unless the government paroles him into the United States, he is no longer legally permitted to reside in the United States. In light of Celaya-Jaramillo's recent relocation to Nogales, Mexico, recent separation, and apparent acquiescence to his removal in the immigration proceedings, the Court cannot conclude that Celaya-Jaramillo has a strong motive to remain in the United States for work or family. Specifically, it is not known if Celaya-Jaramillo now affirmatively wishes to return to Mexico. While Celaya-Jaramillo's removal by immigration authorities would not be volitional on his part, the Court considers his acquiescence to the removal by admitting the criminal offenses and not pursuing any administrative remedies as a change in circumstances: Celaya-Jaramillo's motivation to remain in the United States and appear for further criminal proceedings is difficult to ascertain. In other words, if this Court were to order Celaya-Jaramillo be released and ICE did not remove Celeya-Jaramillo, Celaya-Jaramillo's circumstances as laid out herein lead to a conclusion that Celaya-Jaramillo would have minimal or no reason to remain in the United States or appear for further criminal

proceedings. Celaya-Jaramillo has not presented sufficient evidence to rebut the presumption of a risk of flight. The Court finds this factor weighs in favor of the detention of Celaya-Jaramillo.[3]

The Court gives little weight to the fourth factor but recognizes that narcotics trafficking constitutes a danger to the community. *See United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985) (the harm to society caused by narcotics trafficking is encompassed within Congress' definition of "danger" as the term is used in § 3142(g)); *United States v. Ailemen*, 165 F.R.D. 571, 596 (N.D. Cal. 1996) (a drug trafficker is a danger to the community). The Court finds this factor weighs in favor of Celaya-Jaramillo's detention.

Although Celaya-Jaramillo has presented some evidence that weighs against the presumption of his detention, a consideration of all of the factors leads this Court to conclude that there is no condition or combination of conditions that will reasonably assure the appearance of Celaya-Jaramillo as required and the safety of the community.

Accordingly, IT IS ORDERED the November 4, 2016, Order detaining Celaya-Jaramillo is CONFIRMED.

DATED this 8th day of November, 2016.

Cindy K. Jorgenson
United States District Judge

---

[3] While information that immigration authorities in this case will remove Celaya-Jaramillo within 72 hours is more definitive than the circumstances in similar cases, the Court recognizes the Ninth Circuit has stated that detention "pending trial based on the possibility of [a defendant's] detention or removal by immigration authorities . . . is contrary to the express language of the [BRA]." *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015). Although the Court finds a preponderance of evidence establishes Celaya-Jaramillo poses a flight risk without consideration of the impending removal, the Court does note this circumstance corroborates the Court's conclusion as to Celaya-Jaramillo's lack of motivation to remain in the United States or appear for further criminal proceedings.